UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00563-CRS

**VICTOR H.**                                                                                                    **PLAINTIFF**

**VS.**

**MARTIN O'MALLEY,**[1]
*Acting Commissioner of Social Security*                                                **DEFENDANT**

## REPORT AND RECOMMENDATION

The Commissioner of Social Security denied Victor H.'s[2] ("Claimant's") application for supplemental security income benefits. Claimant seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). (DN 1). Claimant has filed a Fact and Law Summary and Brief. (DN 13). The Commissioner has responded in a Fact and Law Summary. (DN 20). Claimant has filed a reply brief. (DN 21). The District Judge referred this case to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 12).

### I. Background

This is a consolidated claim. Claimant first applied for supplemental security income benefits on November 8, 2017. (Transcript, hereinafter "Tr.," 206-11). In his application, Claimant alleged disability beginning on October 16, 2017, due to his hands, back, arthritis, psychiatric issues, and a learning disability. (Tr. 283). After state agency denials and a hearing, Administrative Law Judge Candace A. McDaniel found Claimant not disabled. (Tr. 12, 65, 119, 132). On

---

[1] Martin O'Malley became the Acting Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.
[2] Pursuant to the Western District of Kentucky's General Order No. 22-05, any non-government party in a 42 U.S.C. 405(g) case will be identified and referenced by first name and last initial in opinions issued.

September 13, 2021, another Magistrate Judge in this District remanded the case to the agency for further proceedings. (Tr. 992).

In the meantime, Claimant filed a subsequent application for supplemental security income benefits on July 15, 2020. (Tr. 1287). His application alleged disability beginning July 4, 2019, due to the same issues listed in his previous application. (Tr. 1334). His second application was denied on initial review and again on reconsideration. (Tr. 938, 957). Administrative Law Judge Scott Shimer ("ALJ Shimer") conducted a hearing in Louisville, Kentucky on January 4, 2022. (DN 17). Shortly thereafter, the Appeals Council ordered Claimant's second claim to be consolidated with his remanded claim. (Tr. 996). ALJ Shimer conducted another hearing in Franklin, Tennessee on May 17, 2022 on Claimant's consolidated claim. (Tr. 871). Claimant attended the hearing by telephone with his attorney.[3] (Tr. 873). An impartial vocational expert also attended the hearing. (*Id.*).

During the hearing, Claimant testified to the following. Claimant currently lives with his mother. (Tr. 886). Although he has participated in some side jobs, Claimant has not held a regular, full-time job in the past fifteen years. (Tr. 880). While working on a side job, Claimant injured both of his biceps. (*Id.*). Claimant also complained of pain in his left shoulder, lack of grip strength in his right hand, and only 20% grip strength in his left hand. (Tr. 890, 893).

In addition, Claimant has a long history of mental health difficulties. He stopped attending school after the fifth grade. (Tr. 881). Although he can perform simple math and read short words, he has the equivalent of a first or second grade reading level. (Tr. 882-84). He testified that he has issues getting along with other people. (Tr. 889). Claimant does not socially interact with any friends because they have all passed away, and he frequently argues with his mother. (Tr. 890).

---

[3] Claimant agreed to appear at the administrative hearing by phone because of the COVID-19 pandemic. (Tr. 1270).

Nevertheless, he helps his mother with household chores by washing the dishes, mopping, and cleaning the bathroom. (Tr. 894). Claimant is in monthly counseling for his mental health issues. (Tr. 888). He is prescribed two or three mental health medications but does not take them regularly because he has struggled with narcotics addiction in the past. (Tr. 888-89).

ALJ Shimer issued an unfavorable decision on June 28, 2022. He applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Claimant has not engaged in substantial gainful activity since November 8, 2017, the application date. (Tr. 843). Second, Claimant has the following severe impairments: intermittent explosive disorder, anxiety, depression, personality disorder, and borderline intellectual functioning. (Tr. 844). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 846). Between the third and fourth steps, ALJ Shimer found Claimant has the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels" with the following non-exertional limitations:

> [N]o reading beyond the first to second grade reading level; able to understand and remember simple, routine tasks; able to maintain concentration, persistence, or pace for performing simple, routine tasks; no interaction with the public, but can have occasional interactions with coworkers and supervisors; and can tolerate occasional workplace changes.

(Tr. 853). Fourth, Claimant has no past relevant work. (Tr. 857). Fifth and finally, after considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy he can perform. (*Id.*). Based on this evaluation, ALJ Shimer concluded Claimant has not been under a disability, as defined in the Social Security Act, since November 8, 2017, the date the application was filed. (Tr. 858).

After Claimant filed untimely exceptions to ALJ Shimer's decision, the Appeals Council declined review. (Tr. 825). At that point, ALJ Shimer's denial become the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges ("ALJs") make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the ALJ's decision is limited to an inquiry as to whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified

"whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Conclusions of Law

Claimant submits three claims of error from ALJ Shimer's decision. First, Claimant asserts ALJ Shimer did not consider the record as a whole in making his decision because the record was missing the transcript and decision from the January 4, 2022 hearing. Second, Claimant states that ALJ Shimer erred in finding that Claimant's mental impairments did not meet Listing 12.08 for personality and impulse-control disorders. Finally, Claimant believes ALJ Shimer failed to explain how Consultative Examiner Dr. Dennis' findings lacked supportability and consistency with the record.

#### A.   January 4, 2022 Hearing Transcript and Decision

In his brief, Claimant highlights that the administrative record lacked the transcript of the January 4, 2022 hearing and alleges that the decision issued after the hearing was missing as well. (DN 13, at PageID # 1629). Because neither of these documents were in the record, Claimant argues ALJ Shimer did not consider the record as a whole in making his decision and the Commissioner's decision is not reviewable. (*Id.*). Claimant further contends that the omissions violated 42 U.S.C. § 405(g), which requires the Commissioner to file certified copies of hearing transcripts to the record. (*Id.* at PageID # 1630).

According to the Commissioner, the Court Case Preparation and Review Branch ("CCPRB") of the Social Security Administration's ("SSA's") Office of Appellate Operations erroneously omitted the January hearing transcript from the initial certified administrative record. (DN 20, at PageID # 1686). Claimant's brief alerted the Commissioner to the oversight, and the

5

Commissioner subsequently requested the CCPRB to create a supplemental administrative record. (*Id.*). The Commissioner filed this supplemental record on April 24, 2023. (*See* DN 17).

In response to Claimant's argument, the Commissioner asserts that ALJ Shimer never issued a decision on the January hearing. (DN 20, at PageID # 1685). In addition, the Commissioner contends that, even if the hearing transcript was not included in the initial record, ALJ Shimer considered the hearing in his decision. (*Id.* at PageID # 1686). The Commissioner highlights that ALJ Shimer was present at the January hearing, had access to an audio recording, and discussed Claimant's allegations from the January hearing that were repeated in the May hearing. (*Id.* at PageID # 1686-87). Moreover, the Commissioner emphasizes that Claimant does not point to any evidence relevant to his claim that ALJ Shimer failed to consider in his decision. (*Id.* at PageID # 1688 n.3).

In his reply, Claimant reiterates that ALJ Shimer issued a decision prior to the consolidation of his claims. (DN 21, at PageID # 1701). He alleges that the omission of this decision and initial omission of the hearing transcript from the record violated his due process right to have access to all the evidence upon which the ALJ's decision was based. (*Id.* at PageID # 1702). In support of this argument, Claimant heavily relies on *Wilson v. Commissioner of Social Security* where the Sixth Circuit discussed how an agency's failure to follow its own regulations *may* result in a violation of the claimant's constitutional right to due process. 378 F.3d 541, 545 (6th Cir. 2004).

Claimant's allegations that the Commissioner violated Social Security regulations and his due process rights by failing to include the January hearing decision is a non-issue as no such decision was ever issued. Claimant is correct that, at the May hearing, ALJ Shimer stated that he issued a decision after the January hearing. (Tr. 875). However, what Claimant fails to acknowledge is, later in the hearing, ALJ Shimer corrects his earlier statement, stating instead that

6

he began to draft a decision but "pulled it back and [did] not sign it." (Tr. 876). ALJ Shimer specified that before the January hearing decision went out, his office received news of the consolidation of Claimant's cases and decided to wait to issue an official decision. (Tr. 877). Because ALJ Shimer never issued an official decision after the January hearing, it is not missing from the administrative record. Claimant is not entitled to information contained in an unofficial, drafted decision.

Further, the fact that the January 4, 2022 hearing transcript was initially missing from the record does not require remand. It is not abnormal for the record to be supplemented when a transcript is missing from the initial record. *See Ashley v. Comm'r of Soc. Sec.*, No. 17-11821, 2018 U.S. Dist. LEXIS 164357, at *6 n.2 (E.D. Mich. Aug. 23, 2018) ("In this section of her brief, plaintiff is citing to the supplemental transcript at docket no. 15, which contains pages missing from the hearing transcript at docket no. 12."). The Commissioner's supplementing of the transcript cures many of Claimant's concerns. Because the transcript is now on the record, the Commissioner's decision is fully reviewable and Claimant has access to all the evidence which ALJ Shimer considered in making his decision. Even if the Commissioner had not supplemented the record, Claimant was present at the January hearing, so he was aware of the evidence that he and the vocational expert presented. Thus, Claimant's due process rights were not violated by the initial omission of the transcript from the record.

Claimant's reliance on *Wilson* does not persuade the Court otherwise. The *Wilson* court discussed due process in the context of the Commissioner's failure to articulate good reasons for not crediting the opinion of a treating source, not in the context of a transcript that was initially missing from the record but was later provided. *Wilson*, 378 F.3d at 545. In fact, the *Wilson* court did not explicitly hold that the Commissioner had violated the claimant's due process rights but

mentioned due process in a Ninth Circuit quote to support a contention that administrative agencies should follow their regulations. *Id.* As such, Claimant's reliance on *Wilson* is misplaced.

Claimant's argument that ALJ Shimer did not consider the record as a whole also lacks merit. ALJ Shimer presided over the January hearing. At the January hearing, he changed the alleged onset date to November 8, 2017, the date from Claimant's first application, to avoid having a subsequent hearing once the cases were consolidated. (Tr. 1587). At the May hearing, ALJ Shimer stated that the January hearing would be part of the consolidated claim. (Tr. 876). Notably, the January and May hearings covered substantially similar topics. Although ALJ Shimer did not specifically mention that he considered the January hearing in his decision, a reading of both the January and May hearing transcripts indicates that he did. As such, the initial omission of the January 4, 2022 hearing transcript from the record does not warrant remand.

B.  ALJ Shimer's Evaluation of Listing 12.08

Claimant contends that ALJ Shimer erred in finding that his mental impairments did not meet Listing 12.08 for personality and impulse-control disorders. (DN 13, at PageID # 1631). Specifically, Claimant argues that ALJ Shimer erred in determining that the "paragraph B" criteria for interacting with others was only a moderate limitation. (*Id.* at PageID # 1631). Although Claimant's brief is unclear, he appears to also challenge ALJ Shimer's finding of a moderate limitation in adapting and managing himself. (*Id.* at PageID # 1631, 1634). In response, the Commissioner argues that ALJ Shimer's findings are supported by substantial evidence. (DN 20, at PageID # 1692).

At the third step in the disability evaluation process, "a claimant will be found disabled if his impairment meets or *equals* one of the listings in the Listing of Impairments." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing 20 C.F.R. §§

8

404.1520(a)(4)(iii), 416.920(a)(4)(iii)) (emphasis in original). The Listing of Impairments describes impairments the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). Each listing specifies the objective medical and other findings needed to satisfy the criteria of that listing and a claimant must satisfy all the criteria to meet the listing. *Reynolds*, 424 F. App'x at 414. Ultimately, it is a claimant's burden to demonstrate that his impairments meet or medically equal a relevant listing. *Kirkland v. Kijakazi*, No. 3:22-CV-60-DCP, 2023 U.S. Dist. LEXIS 76282, at *10 (E.D. Tenn. May 2, 2023) (citing *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001)).

When considering whether a claimant's impairment meets or equals a listed impairment, an ALJ is required to "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds*, 424 F. App'x at 416. Accordingly, when an ALJ finds a specific listing does not apply but fails "to articulate any specific reasoning for her determination," the ALJ's "step-three findings normally [] constitute reversible error." *Vickers v. Comm'r of Soc. Sec.*, No. 20-1935, 2021 U.S. App. LEXIS 40336, at *9 (6th Cir. July 12, 2021) (finding the ALJ erred by concluding Listing 5.00 did not apply but failing to articulate any specific reasoning for their determination).

However, an ALJ's failure to articulate specific reasoning for finding a listing does not apply is not reversible error if "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three" or the claimant "has not shown [on appeal] that his impairments met or medically equaled in severity any listed impairment." *Forrest*, 591 F. App'x at 366; *see also Vickers*, 2021 U.S. App. LEXIS 40336, at *9 ("But the error was harmless because,

9

to the extent that Vickers claims that he actually met or medically equaled any particular listing . . . he has not . . . explained how these impairments met or equaled it.").

Listing 12.08 addresses personality and impulse-control disorders. 20 C.F.R. pt. 404, subpart. P, app. 1 § 12.08. To meet Listing 12.08, a claimant is required to demonstrate he meets both the "A" and "B" criteria. *Id.* Specifically, to satisfy the "B" criteria, a claimant must demonstrate: "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) [u]nderstand, remember, or apply information[;] (2) [i]nteract with others[;] (3) [c]oncentrate, persist, or maintain pace[;] (4) [a]dapt or manage oneself." *Id.*

ALJ Shimer considered, and ultimately rejected, the applicability of Listing 12.08. (Tr. 850). ALJ Shimer determined that Claimant's impairments did not meet the "paragraph B" criteria because Claimant had only moderate limitations in each of the areas of mental functioning. (Tr. 850-52). In finding that Claimant had a moderate limitation in interacting with others, ALJ Shimer acknowledged Claimant's own reports of his difficulty with social interaction, including issues with his family members. (Tr. 258, 851, 890, 1367). However, ALJ Shimer countered Claimant's subjective reports by highlighting Claimant's ability to live with his family, his friends who transport him places, and his appropriate behavior with his medical providers. (Tr. 303, 557, 621, 851-52, 886, 1360). Specifically, ALJ Shimer pointed out that Claimant's medical providers reported him as pleasant and cooperative with no serious deficiencies in eye contact, speech, or conversation. (*See, e.g.*, tr. 557, 603, 655, 720, 805, 851-52, 1443). ALJ Shimer noted that, while Claimant has alleged explosive behavior problems, he interacts with local acquaintances, can use public transportation, and shops in stores. (Tr. 307, 851-52, 1365). ALJ Shimer also cited

Claimant's legal history involving theft and drug abuse—as opposed to violent behavior—and his limited effort in seeking treatment.[4] (Tr. 221, 364, 749, 851).

In finding that Claimant had a moderate limitation in adapting and managing oneself, ALJ Shimer explained that, throughout his medical record, Claimant had not complained much about any problems in this regard. (Tr. 852). ALJ Shimer noted how Claimant's medical providers did not report any deficiencies in Claimant's hygiene or attire. (Tr. 557, 621, 852). ALJ Shimer emphasized that Claimant had no problems being aware of normal hazards, taking appropriate precautions, independently making plans, or setting goals. (Tr. 236-37, 254-56, 307, 559, 852, 1365). In fact, ALJ Shimer pointed out, Claimant had "largely handled [his] own activities of daily living without significant assistance from others." (Tr. 852-53).

Claimant challenges ALJ Shimer's analysis by citing to different symptoms that he contends are well documented in the record and indicative of his extreme limitations in these areas. Claimant summarizes the evidence as follows: "the ALJ's findings of the severe impairments of personality disorder and intermittent explosive disorder []; a history of being in State's custody since age 9 []; his criminal record; consistent medical findings of irritability, anger and aggressive temper; findings of nonconformity; and findings of disregard of for [sic] others." (DN 13, at PageID # 1630). Throughout his brief, Claimant references the "gorilla" within him, a term he presumably uses to describe his personality disorder. (*Id.* at PageID # 1633-35). Claimant also seems to take particular issue with ALJ Shimer's reliance on Claimant's appropriate behavior with his treating physicians, arguing that these occasional visits did not reflect the reality of his

---

[4] As the record shows that Claimant sought out mental health treatment on numerous occasions, the undersigned does not find that ALJ Shimer's assertion that Claimant "put forth no more than limited effort for treatment" is supported by substantial evidence. (Tr. 851). However, it is not apparent from ALJ Shimer's decision that this was a determinative factor in his analysis. As such, the undersigned does not find remand is warranted for inclusion of this singular phrase.

functioning. (*Id.* at PageID # 1635). In support, Claimant cites to *Rogers v. Commissioner of Social Security*, where the Sixth Circuit discussed the importance that benefits determinations be made in light of the record as a whole to help ensure that the ALJ's focus does not concentrate on one aspect of the claimant's history, especially "if that one aspect does not reasonably portray the reality of the claimant's circumstances." 486 F.3d 234, 249 (6th Cir. 2007)

The undersigned finds that ALJ Shimer's conclusions as to the relevant criteria are supported by substantial evidence. First, when evaluating the functional areas of "paragraph B," ALJ Shimer considered evidence that both supported and discounted Claimant's subjective allegations. Second, ALJ Shimer found the opinions of state agency medical consultants generally persuasive. (Tr. 855-56). In January 2016, March 2018, and April 2018, these consultants concluded that Claimant had only moderate limitations in each of the areas of mental functioning. (Tr. 106-17, 119-30, 132-47, 938-953, 957-62). These state agency physicians' opinions are supported by substantial evidence in the record. Third, the fact that ALJ Shimer did not specifically discuss some of the information from therapy notes referenced in Claimant's brief does not justify remand. The Sixth Circuit has rejected a heightened articulation standard for ALJs at step three. *See Bledsoe v. Barnhart*, 165 Fed. App'x 408, 411 (6th Cir. 2006) (holding that the ALJ is under no obligation to spell out "every consideration that went into the step three determination"). Even if there is substantial evidence in the record that would have supported an opposite conclusion, "if the Commissioner's decision is supported by substantial evidence, [the court] must uphold it[.]" *Nettleman v. Comm'r of Soc. Sec.*, 725 F. App'x 358, 360 (6th Cir. 2018). Finally, *Rogers* is not applicable to this case. ALJ Shimer did not solely concentrate on Claimant's behavior toward his treating physicians in making his decision. As discussed above, ALJ Shimer pointed to multiple inconsistencies on the record to find that Claimant's limitations were not as restrictive as he

alleged. Further, the *Rogers* court did not address whether an ALJ's focus on a claimant's behavior toward his providers is improper. Rather, Claimant picked a singular phrase from *Rogers'* conclusion and applied it in his brief. Claimant's reliance on out-of-context language from Sixth Circuit opinions is not persuasive.

Overall, ALJ Shimer's step-three analysis of Listing 12.08 is supported by substantial evidence in the record and complies with the regulations.

### C. ALJ Shimer's Evaluation of Dr. Dennis' 2018 Opinion

Claimant also takes issue with ALJ Shimer's evaluation of Dr. Dennis' 2018 medical opinion in his RFC determination. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases his RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

In this case, the new regulations for evaluating medical opinion evidence apply because Claimant filed his applications for supplemental security income benefits after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The new regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. *Id.* ALJs now evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. *Id.* (c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.*

13

(a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination. *Id.* (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.* Additionally, ALJs "must consider" medical findings of non-examining state agency medical or psychological consultants. 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion "is consistent with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* (c)(2).

Dr. Brandon Dennis, Psy.D. conducted two consultative examinations of Hardy, one on November 3, 2015 and the other on February 21, 2018. (Tr. 556-61, 620-24). Claimant appears to only take issue with ALJ Shimer's evaluation of Dr. Dennis' 2018 opinion.[5] (DN 13, at PageID # 1634). During his second examination, Dr. Dennis noted that, although Claimant initially had a "more hostile" attitude, his demeanor eased as the exam proceeded. (Tr. 622). Dr. Dennis also observed that Claimant was reasonably reliable in providing his history and had acceptable hygiene. (Tr. 621). Although Claimant's speech was difficult to understand at times, Dr. Dennis found that he could concentrate and was mostly attentive throughout the examination. (Tr. 622). Dr. Dennis perceived that Claimant had fair comprehension with linear thought process. (*Id.*).

---

[5] In his Fact and Law Summary, Claimant argues that ALJ Shimer "failed to indicate what records [he] relied on in finding that Dr. Dennis's *2018 evaluation* was inconsistent with other reports." (DN 13, at PageID # 1634) (emphasis added). In addition, Claimant only references Dr. Dennis' medical source statement from his 2018 evaluation. (*Id.*).

Finally, Dr. Dennis noted that Claimant had some issues with recall but had sufficient remote memory with mostly intact recent memory. (*Id.*).

Based on his examination, Dr. Dennis diagnosed Claimant with borderline intellectual functioning, antisocial personality disorder, and polysubstance dependence, reportedly in remission. (Tr. 623). He concluded that "[t]here is a long history of behavioral problems and mood disturbance, but it is not clear that he meets full criteria for any particular mood disorder." (Tr. 622-23). Dr. Dennis opined that Claimant's ability to maintain effective social interaction on a consistent and independent basis with supervisors, co-workers, and the public would be extremely limited. (Tr. 623). He further opined that Claimant's ability to tolerate the stress and pressure of daily work activity in a competitive setting is probably markedly to extremely limited. (*Id.*).

ALJ Shimer found Dr. Dennis' opinions "not persuasive" because "[t]he objective record overall simply does not support such level [sic] restrictive mental limitations and that includes Dr. Dennis's own findings." (Tr. 856). ALJ Shimer pointed to Dr. Dennis' inclusion of vague adverbs in describing Claimant's limitations, indicating Dr. Dennis' own hesitancy as to the degree of recommended restrictiveness (e.g., Claimant's ability to tolerate the stress of work "is *probably* markedly to extremely limited overall.").[6] (Tr. 625, 856) (emphasis added). ALJ Shimer reiterated Dr. Dennis' observations of Claimant during his 2018 examination of Claimant. (*Id.*). Specifically, ALJ Shimer emphasized that Dr. Dennis found Claimant reliable in providing his medical history, acceptably hygienic, mostly attentive, and oriented. (Tr. 621-22, 856). ALJ Shimer also mentioned how Dr. Dennis noted that Claimant's demeanor eased throughout the exam and that he had fair

---

[6] ALJ Shimer also emphasized certain verbs and adverbs in Dr. Dennis' 2015 medical source statement; however, he argued earlier in his decision that the 2015 opinion was "just too remote for providing reasonably supported mental limitations since the [sic] October 2017." (Tr. 856). And Claimant does not directly challenge ALJ Shimer's analysis of Dr. Dennis' 2015 opinion.

comprehension, linear thought process, and sufficient remote memory with mostly intact recent memory. (Tr. 622, 856).

Claimant asserts ALJ Shimer did not properly evaluate the supportability and consistency of Dr. Dennis' opinion. (DN 13, at PageID # 1634). Specifically, Claimant argues that ALJ Shimer did not cite to records proving Claimant could consistently maintain social interaction or identify Dr. Dennis' own findings that were internally inconsistent with his conclusions. (*Id.* at PageID # 1634-35).

In his first argument, Claimant misstates the burden of proof. As it is the claimant's burden to prove his impairments, ALJ Shimer was not required to prove that Claimant could consistently maintain social interaction. Second, Claimant's allegation that ALJ Shimer did not explain the internal inconsistency of Dr. Dennis' opinion is false. ALJ Shimer noted that Dr. Dennis' opined limitations were not supported by his findings on objective exam and provided examples of Dr. Dennis' conflicting findings. (Tr. 855-56). In citing these examples, ALJ Shimer identified the specific portions of Dr. Dennis' opinion he found to be contradictory.

ALJ Shimer further asserted that Dr. Dennis' opined limitations were inconsistent with the overall objective record. (*Id.*). Though ALJ Shimer did not follow this analysis with specific examples of the opinion's inconsistency, he did so elsewhere in his decision. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that the ALJ's analysis may be found throughout the decision). For instance, ALJ Shimer noted "there are inconsistencies in the claimant's reports in the existing record as compared to many of his allegations of disabling mental health difficulties." (Tr. 850). Regarding Claimant's ability to socially interact with others, ALJ Shimer pointed out how, despite Claimant's anti-social complaints, he has friends who drive him places, can utilize public transportation, and shops in stores. (Tr. 307, 557, 621, 851-52, 1365).

Moreover, Claimant acted appropriately with treating physicians, who described him as cooperative and did not observe any serious deficiencies in eye contact, speech, or conversation. (*See, e.g.*, tr. 557, 603, 655, 720, 805, 851-52, 1443). Other courts in this Circuit have found similar facts to constitute substantial evidence supporting a view that a claimant is not as socially limited as a consultant suggests. *See, e.g., Tracy F. v. Comm'r of Soc. Sec.*, No. 2:23-cv-00188, 2023 U.S. Dist. LEXIS 221816, at *28 (S.D. Ohio Dec. 13, 2023) (finding that the ALJ provided substantial support by identifying claimant's ability to interact appropriately with treatment providers).

Turning to Claimant's ability to adapt and manage himself, ALJ Shimer highlighted practitioners' observations that Claimant was hygienic and wore appropriate attire. (Tr. 557, 621, 852). In addition, ALJ Shimer stated that Claimant had no issues independently making plans and setting goals and largely handled his own activities without significant assistance from others. (Tr. 236-37, 254-56, 307, 559 852-53, 1365). Thus, ALJ Shimer provided substantial support for his differing view that Claimant was not as socially limited or unable to adapt and manage himself as Dr. Dennis suggested.

Based on the above analysis, ALJ Shimer's conclusion that Dr. Dennis' opinion was generally unpersuasive is supported by substantial evidence in the record and complies with the pertinent regulations.

### IV. Recommendation

For the foregoing reasons, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED**.

## NOTICE

Therefore, under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).


Copies:    Counsel